People v Fernandez (2023 NY Slip Op 04326)

People v Fernandez

2023 NY Slip Op 04326

Decided on August 16, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 16, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
ROBERT J. MILLER
WILLIAM G. FORD
DEBORAH A. DOWLING, JJ.

2019-09464

[*1]The People of the State of New York, respondent,
v
Abraham Fernandez, appellant.

Patricia Pazner, New York, NY (Ava C. Page of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Anthea H. Bruffee, and Andrew S. Durham of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from an order of the Supreme Court, Kings County (Guy James Mangano, Jr., J.), dated July 17, 2019, which, after a hearing, designated him a level two sex offender pursuant to Correction Law article 6-C.
ORDERED that the order is affirmed, without costs or disbursements.
The defendant was arrested in December 2015, after he was found to have uploaded to the internet two images depicting the sexual abuse of children between the ages of two and five years old. While that case was pending and while attending sex offender treatment, the defendant was arrested a second time in November 2016, after he obtained a new email account and uploaded three more images depicting the sexual abuse of children approximately five to seven years old. He was charged in separate indictments and convicted, upon his pleas of guilty, of promoting a sexual performance by a child and possessing a sexual performance by a child. After a hearing pursuant to the Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA), the Supreme Court assessed the defendant a total of 85 points, which placed him at the lower end of the presumptive level two risk category. Specifically, the court assessed 30 points under risk factor 3 (number of victims), 30 points under risk factor 5 (age of the victims-10 or less); 20 points under risk factor 7 (victims were strangers); and 5 points under risk factor 9 (prior criminal history, but no prior convictions or adjudications for sex crimes or felonies). The court denied the defendant's request for a downward departure to a risk level one designation, and designated him a level two sex offender. The defendant appeals.
Contrary to the People's contention, the defendant preserved for appellate review his contention that the Supreme Court improvidently exercised its discretion in denying his request for [*2]a downward departure from the presumptive risk level (see CPL 470.05[2]).
"One of the legislature's principal goals in enacting SORA was to protect the public from the danger of recidivism posed by sex offenders" (People v Cook, 29 NY3d 121, 125 [internal quotation marks omitted]). Under SORA, the Board of Examiners of Sex Offenders (hereinafter the Board) develops "guidelines and procedures to assess the risk of a repeat offense by [a] sex offender and the threat posed to the public safety" (Correction Law § 168-l[5]). Among other things, the SORA guidelines are based on "criminal history factors to be considered in determining risk," including the "relationship between [the] sex offender and the victim" (id. § 168-l[5][b][i]; see People v Gillotti, 23 NY3d 841, 852; see also Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 4 [2006] [hereinafter Guidelines]). Based on the Guidelines, the Board makes a recommendation as to the offender's risk level classification (see Correction Law § 168-l[6]). "'Applying the guidelines,' a reviewing court at a SORA hearing must determine the offender's risk level classification by either accepting the Board's recommendation or rejecting that recommendation in favor of a different risk level classification supported by the evidence presented at the hearing" (People v Gillotti, 23 NY3d at 852, quoting Correction Law § 168-n[2], [3] [alterations omitted]).
The Court of Appeals has expressly recognized that, in cases involving child pornography offenders, the assessment of points under risk factors 3 (number of victims) and 7 (victims were strangers) may result in an "overestimate" of the offender's "risk of reoffense and danger to the public" (People v Gillotti, 23 NY3d at 860). This concern is reflected in the Board's 2012 Scoring of Child Pornography Cases Position Statement, which recognizes that it is appropriate to continue to score points under risk factors 3 and 7 in such cases, but which sets forth a non-exhaustive list of factors to consider in determining whether a departure from the presumptive risk level is warranted, including the number of images possessed (see id. at 853-854; People v Gonzalez, 189 AD3d 509, 510). The departure process is the best way to avoid potentially "anomalous results" for some child pornography offenders that "the authors of the Guidelines may not have intended or foreseen" (People v Johnson, 11 NY3d 416, 418, 421; see People v Gillotti, 23 NY3d at 860). The Court of Appeals has stated that, "in deciding a child pornography offender's application for a downward departure, a SORA court should, in the exercise of its discretion, give particularly strong consideration to the possibility that adjudicating the offender in accordance with the guidelines point score and without departing downward might lead to an excessive level of registration" (People v Gillotti, 23 NY3d at 860).
As a general matter, a defendant seeking a downward departure from the presumptive risk level has the initial burden of "(1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence" (People v Wyatt, 89 AD3d 112, 128; see People v Gillotti, 23 NY3d at 861; see also Guidelines at 4). "If the defendant makes that twofold showing, the court must exercise its discretion by weighing the mitigating factor to determine whether the totality of the circumstances warrants a departure to avoid an overassessment of the defendant's dangerousness and risk of sexual recidivism" (People v Tirado, 165 AD3d 991, 992; see People v Gillotti, 23 NY3d at 861).
Contrary to the defendant's contention, his score on an alternate risk assessment instrument, standing alone, does not qualify as a mitigating factor (see People v Rolon, 210 AD3d [*3]708, 708-709; People v Curry, 158 AD3d 52, 54, 58). Further, although the defendant's completion of a sex offender treatment program with positive reviews for his progress therein is a positive development, it does not amount to "proof of an exceptional response" to treatment that may form the basis for a downward departure (People v Grunwald, 201 AD3d 825, 826). Nonetheless, the defendant met his initial burden of identifying and proving the existence of an appropriate mitigating factor (see People v Wyatt, 89 AD3d at 128), insofar as he was assessed points under risk factor 3 (number of victims) and risk factor 7 (victims were strangers) for convictions based upon a small number of images depicting child sexual abuse (see People v Gillotti, 23 NY3d at 860, 864; People v Sestito, 195 AD3d 869, 869; People v Gonzalez, 189 AD3d at 510-511).
However, under the totality of the circumstances, the Supreme Court providently exercised its discretion in denying his application for a downward departure based upon this singular mitigating factor, given, among other things, that the defendant was not convicted of merely possessing the images, but also of promoting them, and that he committed the second offense after having been arrested for the first offense and while he was attending sex offender treatment (see generally People v Gillotti, 23 NY3d at 861).
The defendant's remaining contention need not be reached.
BRATHWAITE NELSON, J.P., MILLER, FORD and DOWLING, JJ., concur.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court